UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

OSCAR SENTELL FAISON,

                              Plaintiff,

                                                                                          DECISION AND ORDER

                                                                                           03-CV-6475L

                            v.

JANICKI, Nurse Practitioner,
et al.,

                              Defendants.
_____

## INTRODUCTION

      Plaintiff Oscar Sentell Faison, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects while plaintiff was confined at Oneida Correctional Facility ("Oneida") and Groveland Correctional Facility ("Groveland"). Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## DISCUSSION

**I. Eighth Amendment Medical Care Claims**

      Plaintiff asserts claims ("medical claims") against a physician, a registered nurse, and two nurse practitioners employed by DOCS, alleging that they violated his rights to adequate medical

care under the Eight Amendment to the United States Constitution. Defendants are entitled to summary judgment on these claims.

To show that prison medical treatment was so inadequate as to amount to "cruel or unusual punishment" prohibited by the Eighth Amendment, a plaintiff must prove that the defendant's actions or omissions amounted to "deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995)).

The Supreme Court has explained that the "deliberate indifference" component includes both an objective and a subjective element. *Wilson v. Seiter*, 501 U.S. 294, (1991). With respect to the objective aspect, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the subjective component, the court must consider whether the deprivation was brought about by defendants in wanton disregard of those rights. *Id.* To establish deliberate indifference, then, plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain. *See id.* at 299; *DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir. 1991); *Ross v. Kelly*, 784 F.Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040 (1992).

The Court has also cautioned that mere negligence is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*,

429 U.S. 97, 106 (1976). Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.* at 102, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 105-06.

Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *see also Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion").

In the case at bar, plaintiff has failed to present sufficient facts to show the existence of a genuine issue of material fact as to his medical claims. With respect to his claim against Nurse Practitioner Janicki, the complaint itself simply alleges that she "failed to exercise her best judgment and neglected to use reasonable care" in treating plaintiff. Complaint § 5(B). Those are, at most, allegations of negligence or malpractice, and plaintiff's submissions in opposition to defendants' motion contain no evidence suggesting anything more than that.

Plaintiff's claim against Registered Nurse Destito is equally meritless. The complaint alleges that she infected plaintiff with the Hepatitis B virus when she administered his annual tuberculosis injection. Complaint § 5(E). At his deposition in this case, plaintiff testified that Destito "*negligently*, *maybe* intentionally, infected me with hepatitis B." Dkt. #41 Ex. B at 30 (emphasis added). Plaintiff offers no support for his claim that Destito "maybe intentionally" infected him other than his unsupported speculation that she did so because she was allegedly "romantically involved with one of the officers" who was regularly posted at the clinic at Oneida, against whom plaintiff had filed grievances in the past. *Id.* Such conjecture is not enough to survive summary

judgment. *See Carlyle v. Aubrey*, 189 F.Supp.2d 660, 664 (W.D.Ky. 2001) (inmate plaintiff "ha[d] no evidence, other than his own speculation and the ambiguous, undocumented, and inadmissible comments he claims to have overheard, which would support an inference that the Defendants intentionally disregarded any medical risks he had. That is simply insufficient to create a genuine issue of material fact as to whether the Defendants subjected Carlyle to an 'unnecessary and wanton infliction of pain'") (quoting *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1274-75 (6th Cir. 1974)).

Plaintiff also has no evidence that Dr. Barranos (who apparently rescinded a medical permit for plaintiff to be given a bottom bunk in his cell, *see* Complaint § 5(G)) was deliberately indifferent to his medical needs. At his deposition, plaintiff testified that the basis of his claim against Dr. Barranos was "medical negligence." Dkt. #41 Ex. B at 49. Plaintiff stated that "it was just not right" for Dr. Barranos to rescind his permit, *id.* at 50, and when asked why Dr. Barranos did so, plaintiff replied, "I would have to naturally assume that she felt that I didn't need it I guess. I don't know. I don't know." *Id.* at 59. When asked whether Dr. Barranos had a personal vendetta against plaintiff, he responded, "I would think not. I would like to think not. No." *Id.* at 69.

It is clear, then, that, even assuming that Dr. Barranos's rescission of plaintiff's bottom-bunk permit amounted to a serious deprivation of his constitutional rights–which is doubtful–there is no evidence that Dr. Barranos acted with a culpable state of mind. Plaintiff's claim against her therefore fails.

As to Nurse Administrator Felker, plaintiff alleges that she "refused to see" plaintiff and "participated in the inappropriate medical treatment and care" given to plaintiff. Complaint § 5(H). Plaintiff's deposition testimony and response to defendants' motion add little to these vague

allegations. Plaintiff alleges that Felker was somehow "less than honest" with him and that she "sided openly with Doctor Barranos's unjust actions," Plaintiff's Mem. of Law (Dkt. #47) at 3, but he testified that he did not believe that she had any personal vendetta against plaintiff. Dkt. #41 Ex. B at 69. He stated that in general, he believed that DOCS staff members may "take offense" when an inmate files a grievance against them, but he did not believe that Felker had a grudge against him at the time of the events giving rise to his claim against Felker in this action. *Id.* at 69-70. In short, there is simply no evidence of any constitutional deprivation, much less an intentional one, inflicted upon plaintiff by Felker.

**II. Claim against Defendant Watson**

The complaint alleges that defendant Watson was the Inmate Grievance Resolution Committee Supervisor at Groveland, and that she "oppos[ed] plaintiff's inquiry on how best to proceed with a grievance" concerning plaintiff's medical care. Complaint § 5(K). Plaintiff alleges that Watson "became loud, insulting, and threatening" toward plaintiff when he approached her about the grievance. *Id.*

At his deposition, plaintiff testified that when he told Watson that he wanted to file a grievance concerning his alleged Hepatitis B infection, "[s]he was just really like opposed to it. Like 'you can't be serious. This couldn't have happened to you.' ... [T]hat was her reaction. She just kind of got loud about it. ... And she was very disrespectful." Dkt. #41 Ex. B at 113-14.

This simply does not amount to a constitutional violation. Even assuming the truth of plaintiff's allegations that Watson was disrespectful to him and that she "kind of got loud" in voicing her opposition to his grievance, I see no violation of plaintiff's constitutional rights. *See*

*Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful comments directed at an inmate generally do not rise to [a constitutional] level"); *Arce v. Banks*, 913 F.Supp. 307, 309 (S.D.N.Y. 1996) (plaintiff's allegation that nurse "yelled" at him did not rise to constitutional level since "yelling, cursing, or even race-baiting does not violate any constitutionally protected rights").

### III. Claim against Defendant Murray

The complaint alleges that defendant Sergeant Murray filed a false misbehavior report against plaintiff in retaliation for plaintiff's having filed a grievance "against the Program Committee [at Groveland] of which he is a member," and another grievance against Murray himself a day before Murray filed the misbehavior report against plaintiff. Complaint § 5(J). Plaintiff has submitted a copy of the grievances referred to, which are dated July 3 and July 15, 2003, Dkt. #46 at 44, 46, as well as the misbehavior report in question, which is dated July 16, 2003. Dkt. #46 at 43. Although it is difficult to read, the misbehavior report appears to allege that plaintiff was in a certain area at Southport without authorization, and that he lied to Murray about his reasons for being there. Plaintiff alleges that he was later "found not guilty of any infraction ...," although no evidence to that effect appears to be in the record. Plaintiff's Mem. of Law at 3.

In support of their motion, defendants have submitted a Rule 56 statement denying what they characterize as plaintiff's allegation that "Murray retaliated against plaintiff by actually assigning him to a new work assignment, which was the subject of plaintiff's grievance ... ." Dkt. #40 ¶ 3(e). Defendants' memorandum of law and their citations to plaintiff's deposition transcript also focus on Murray's decision (in his role as a member of the Program Committee) to assign plaintiff to work

at the mess hall. Dkt. #42 at 5. Defendants fail to discuss Murray's alleged filing of a false misbehavior report against plaintiff.

The Second Circuit has held that the issuance of false misbehavior reports against an inmate by corrections officers is insufficient on its own to establish a denial of due process, *see Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997), but that such an action violates due process where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, *see Freeman v. Rideout*, 808 F.2d 949, 952 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988), or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights, *see Franco v. Kelly*, 854 F.2d 584, 588-89 (2d Cir. 1988). The filing of an inmate grievance is the exercise of such a constitutional right. *See*, *e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 682-83 (2d Cir. 2002). In addition, "the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation." *Id.* at 683.

Given defendants' failure to address plaintiff's claim against Murray, or at least their seeming misinterpretation of the basis for this claim, defendants' motion for summary judgment as to this claim is denied at this time. Whether Murray might be entitled to summary judgment on a more complete record is a question not presently before me, but on this sparse record he is not. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (1995) (circumstantial evidence, including, *inter alia*, temporal proximity of inmate's filing of lawsuits and officer's issuance of allegedly false misbehavior report, sufficient to withstand summary judgment); *Jones v. Coughlin*, 45 F.3d 677, 680 (2d Cir. 1995) (evidence of sequence of events between inmate's protected activity and filing of allegedly false misbehavior report against inmate, together with other evidence, would permit trier

of fact to infer that filing of false misbehavior report was retaliatory); *Mitchell v. Keane*, No. 93 Civ. 6024, 1994 WL 689076, at *4 (S.D.N.Y. Dec. 8, 1994) (chronology of events, together with dispute as to merit of charge, precluded summary judgment).

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #39) is granted in part and denied in part. Plaintiff's claims against defendants Janicki, Destito, Barranos, Felker and Watson are dismissed. In all other respects, the motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
　　　　February 14, 2007.